IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Paula Gregory, | ) | C/A No.: 1:09-413-HMH-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Commissioner of the Social Security Administration | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff Paula Gregory ("Plaintiff" or "Claimant") brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether he applied the proper legal standards.

I.     Relevant Background

A.     Procedural History

On February 16, 2005, Plaintiff filed applications for DIB and SSI with an alleged onset date of December 27, 2004. Tr. 67-68, 335. Plaintiff's applications were denied initially (Tr. 39, 47–52, 393–99) and on reconsideration (Tr. 40, 43–45, 390–91, 392).

After a hearing (Tr. 414–74), an administrative law judge (ALJ) issued a decision on March 24, 2008, finding that Plaintiff was not disabled within the meaning of the Act from December 27, 2004, through the date of his decision. *See* Tr. 414-74 (hearing transcript, *id.* 16-26 (ALJ's Decision).

B.      Plaintiff's Background and Medical History

Born in 1964, Plaintiff was 43 years old at the time of her hearing before the ALJ. Plaintiff alleges disability as of December 27, 2004, when she had a seizure-like episode at work.  Tr. 420.  Plaintiff completed the tenth grade and has past relevant work as a restaurant kitchen manager.  Tr. 418.

Plaintiff has not disputed the Commissioner's recitation of her medical history set out in the Memorandum in Support of the Commissioner's Decision. [Entry #14.] Therefore, the undisputed medical evidence as stated by the Commissioner is set forth herein.

1.      Medical Evidence Prior to Plaintiff's Alleged Onset of Disability

Plaintiff was treated for depression, seizures, breathing difficulties, and headaches prior to her alleged onset date. Plaintiff reported being treated for depression for over 24 years.  Tr. 143.  Plaintiff was assessed by neurologist Thomas Collings, Jr., M.D., on June 14, 2004, for complaints of migraines and "spells."  Tr. 137–39.  Plaintiff stated that her headaches began about two years earlier.  Tr. 137.  Dr. Collings diagnosed probable common migraine headaches, depression, anxiety, as well as tobacco, alcohol, and drug abuse. Tr. 139. He stated that "although she could have partial complex seizures, they have

not responded to several different anti-epileptic medications and by her history and duration would be more consistent with panic attacks or other functional disorder." *Id.* In November 2004, after reporting problems with coughing, wheezing, and shortness of breath over the prior two years, Plaintiff's pulmonary function was tested. Tr. 146-50. Those tests showed evidence of mild obstructive airway disease, which possibly included some underlying emphysema. Tr. 150.

On December 18, 2004, Plaintiff reported having seizure-like symptoms at work and was taken to the hospital by ambulance. Tr. 173. Records from that hospital visit indicate Plaintiff was alert and oriented with normal gait, motor, and sensory exams. Tr. 175. At Plaintiff's request, she received a neck injection of lidocaine, which she said gave her significant relief from headache. *Id.* Her EKG was negative and her CT scan did not show significant abnormality. Tr. 175; *see* Tr. 180.

### 2. Medical Evidence After Plaintiff's Alleged Onset of Disability

#### a. Plaintiff's Mental Health

Plaintiff sought psychiatric treatment from Janis Browning, D.O., from March 2005 through August 2005. Tr. 249–63. At her initial evaluation, Plaintiff's chief complaints were insomnia and post-traumatic stress disorder ("PTSD"). Tr. 259. Throughout her visits, Plaintiff also reported sleep difficulties, headaches and seizures. During mental status exams, Plaintiff was generally cooperative, exhibited normal rate and quality of speech, exhibited tangential and circumstantial thought processes with hopeless and ruminating thought content and denied hallucinations, suicidal thoughts, and homicidal

thoughts.  *See* Tr. 255, 256, 257, 260.  Dr. Browning initially diagnosed PTSD, major depression, and assessed Plaintiff a global assessment of functioning (GAF) score of 45. Tr. 260.  Over time, Dr. Browning noted that Plaintiff's thinking was more organized, her mood was improved, and her racing thoughts had slowed.  Tr. 255–56.  Although she initially rated Plaintiff's mood as depressed, by June 2005, Dr. Browning rated her mood as "okay."  Tr. 254.  In July 2005 Dr. Browning noted that Plaintiff's depression was better and her thought processes were organized.  Tr. 251. Dr. Browning emphasized the need for Plaintiff to quit smoking.  Tr. 254.  With regard to her seizures, Dr. Browning wrote that it "sounds like neurologists think she has pseudo seizures because they refer her to psych."  Tr. 252.  At her last visit with Plaintiff in August 2005, Dr. Browning noted that Plaintiff's mood was good, but Plaintiff continued to report difficulty falling asleep. Tr. 250.

At the request of the Commissioner, Karl Bodtorf, Psy. D., examined Plaintiff on June 2, 2005.  Tr. 200–204.  As reported by Dr. Bodtorf, during the mental status exam, Plaintiff's speech was clear and understandable; her general activity level seemed lethargic, she understood instructions; her attitude and motivation were appropriate with variable concentration; and she was reasonably verbal in her interactions.  Tr. 200.  Dr. Botdorf also noted, that, although Plaintiff was teary-eyed from time to time during interview, she did not display any psychotic symptomology.  Tr. 201.  Dr. Bodtorf assessed a depressive disorder.  Tr. 204.  He opined that Plaintiff could care for her basic needs and financial matters; that she had moderate limitations on independent functioning,

mild to moderate limitations with respect to memory and concentration, and mild to moderate limitations with respect to social functioning. Tr. 203.

After examining the medical evidence, state agency psychiatrist Craig Horn, Ph.D., found on June 23, 2005, that Plaintiff's psychological impairments were severe, but did not preclude simple routine work away from the public. Tr. 221. On September 12, 2005, after examining the medical evidence, state agency psychiatrist Debra Price, Ph.D., opined that Plaintiff had mild restrictions on activities of daily living, moderate difficulties maintaining social functioning, and moderate difficulties maintaining concentration, persistence, or pace. Tr. 286.

Cynthia Summers, M.S.W., provided a written statement stating she had known Plaintiff since she was 27 years old. She stated that she provided a year of treatment to Plaintiff and that Plaintiff "returned for treatment in 2003." Tr. 225. Ms. Summers described Plaintiff's "severe depression, periods of crying, poor appetite, anxiety, hypervigilance, distrust of everyone, despair, flashbacks, dissociative episodes, and other problems in mental and social functioning . . . . She has difficulty controlling her moods and emotions; she seems unable to sustain cognitive restructuring." *Id.* Ms. Summers concluded by stating that Plaintiff could handle her own funds, as she is "fairly bright." *Id.* The record does not include any treatment notes from Ms. Summers.

At the request of the Commissioner, David Tollison, Ph.D., examined Plaintiff on January 22, 2008. Tr. 369–88. Plaintiff reported experiencing migraine headaches once or twice per month and described symptoms of depression troubling her since her early

teenage years. Tr. 371. During the mental status examination, Plaintiff was oriented, alert, and responsive to inquiry. Tr. 371–72. Her thought processes were intact and coherent, and her memory was intact. *Id.* Plaintiff was able to recite days of the week and months of the year in reverse order; she displayed no hallucinations, delusions, or psychotic symptoms; her grooming and hygiene were appropriate; and she was polite and cooperative. *Id.* Dr. Tollison described her as appearing anxious and depressed. Tr. 372. Dr. Tollison opined that he expected Plaintiff to have difficulty interacting effectively with colleagues, supervisors, and the general public. In his opinion, it was unlikely Plaintiff could complete a series of workdays without interruption from psychological symptoms and unlikely she could maintain concentration and attention over time because of distraction by her psychiatric symptoms. However, Dr. Tollison indicated she was capable of managing her own funds. *Id.* Dr. Tollison also completed a Psychiatric Review Technique form and opined that Plaintiff met Listings 12.04, affective disorders, 12.06, anxiety-related disorders, and 12.08, personality disorders. *See* Tr. 376–87. Further, Plaintiff's treating general practitioner, Dr. Robert Harris, submitted a statement stating that, in his opinion, Dr. Tollison's findings were consistent with his knowledge of Plaintiff's psychological condition since at least January 15, 2003. Tr. 389.

b.     Evidence Regarding Plaintiff's Physical Health

From 2004 through 2008, Plaintiff saw general practitioners Doctors George Neff, Jr. and Robert Harris, both at Wellford Family Medicine ("Wellford"), primarily for headaches and respiratory complaints. Drs. Neff's and Harris's examination notes from

May 26, 2004 include a diagnosis of seizure disorder. Tr. 246. Although Plaintiff continued to visit Wellford, treatment notes after 2004 do not reference seizures.

Plaintiff routinely sought treatment at Wellford for headaches from May 2004 through July 2005. *See* Tr. 227–28, 245–46. These examinations indicated that her headaches were primarily normal, although the notes indicate she had tender trigger points in her neck. Tr. 228, 246. Dr. Neff diagnosed Plaintiff with facial and occipital neuralgia and tension headaches, for which he administered trigger-point injections that reportedly eased Plaintiff's pain. Tr. 229, 233, 246. After July 2005, Plaintiff's treatment notes from Wellford do not include any reference to headache complaints.

Between August 2004 and October 2006, Plaintiff sought regular treatment for respiratory-related symptoms, such as coughing and shortness of breath, although there were times she was treated without complaining of lung-related symptoms. *See* Tr. 227, 232, 234–37, 239, 245, 356, 362, 366. Her October 2004 chest x-ray was within normal limits, as were her respiratory-system physical examinations of October 2005 and 2006. Tr. 236, 364, 349. On other occasions, examination showed rhonci and wheezing in the lungs. Tr. 351, 353, 355, 362. At various times, Drs. Neff and Harris assessed allergic asthma (Tr. 237), chronic airway obstruction (Tr. 235), bronchitis (Tr. 235, 351, 353, 355, 362), and/or sinusitis (Tr. 362, 366).

Drs. Neff and Harris also diagnosed Plaintiff with depression, anxiety and/or a mood disorder, although examination notes accompanying these diagnoses include few findings on which they based their diagnoses. Tr. 344, 346, 361. For example, when Dr.

Harris diagnosed depression in February 24, 2006, Plaintiff checked "no symptoms" under the psychiatric category of complaints (Tr. 360), and Dr. Harris made no psychological findings. Tr. 360–61. On April 30, 2007, Dr. Neff diagnosed Plaintiff with bipolar disorder. However, Dr. Neff's treatment notes from that date indicate Plaintiff's psychological examination was normal. Tr. 346.

On January 15, 2008, Dr. Harris completed responses about Plaintiff's functional capacity on a written form, on which he indicated that Plaintiff suffered from severe and chronic depression and anxiety. Tr. 332–34. Although the form he completed included "persistent back, leg, and hip pain" in the same question asking about depression and anxiety, Dr. Harris crossed out the portion of the question that indicated Plaintiff's back, hip and leg pain were severe. Tr. 332. Dr. Harris opined that it would be reasonable to assume that Plaintiff would miss at least five to six days of work per month due to her depression and anxiety. He further indicated that the above-indicated mental limitations were present since at least December 27, 2004. *Id.* Dr. Harris also opined that Plaintiff's impairments—COPD, obesity, depression and anxiety—limited her abilities to stand and walk. Tr. 333. In his opinion, Plaintiff was limited to standing for thirty minutes at a time and walking ten minutes at a time and that she could carry a maximum sustained weight of five pounds. Tr. 333–34.

After reviewing the medical evidence, state agency physician Dr. William Crosby III completed a residual functional capacity ("RFC") assessment on May 24, 2005. Tr. 192–99. He opined that Plaintiff could lift or carry fifty pounds occasionally and

twenty-five pounds frequently; could stand/walk and sit for six hours each during a eight-hour day; should never climb ladders, ropes, or scaffolds; could occasionally climb ramps or stairs; must avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation; and must avoid even moderate exposure to hazards. Tr. 193–94, 196. On request for reconsideration, state agency physician Dr. Dale Van Slooten made the same RFC findings. Tr. 264–71.

On September 29, 2005, Plaintiff sought emergency room treatment for a migraine headache that she reported was accompanied by blurred vision with aura and nausea and that had lasted ten days. Tr. 304. After being treated with Compazine and Imitrex, the headache ended. Tr. 308. On discharge, Plaintiff was instructed to stop smoking. *Id.* On November 22, 2005, Plaintiff went to the emergency room complaining of a seizure and migraine headache. Tr. 290–93. She was prescribed Imitrex and directed to followup with her care provider. Tr. 290. In February 2006, Plaintiff reported to the emergency room and was diagnosed with chest wall pain and bronchitis. Tr. 294–303. She demonstrated no shortness of breath, normal breath sounds, and was in no respiratory distress. Tr. 296–97. Plaintiff again was directed to stop smoking. Tr. 296.

II.     Discussion

Plaintiff argues that the Commissioner's findings are in error because the ALJ failed to do the following properly:

> 1.     Evaluate the disabling effects of the Claimant's migraine headaches as well as her obesity, low back condition, and COPD and their effect on her ability to engage in substantial gainful work; and

2.      Evaluate the disabling effects of the Claimant's personality disorder, depression, anxiety, PTSD, and, as part of this error, the ALJ improperly disregarded the medical opinion of Plaintiff's treating doctor.

The Commissioner disagrees, claiming the ALJ's denial of disability is supported by substantial record evidence, some of which the Commissioner discusses in its brief.

A.      ALJ Findings

In his decision dated March 24, 2008, the ALJ made the following findings of fact and conclusions of law:

1.      The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2.      The claimant has not engaged in substantial gainful activity since December 27, 2004, the alleged onset date (20 CFR 404.1520(b), 404.1571 et seq., 416.920(b) and 416.971 et seq.).

3.      The claimant has the following severe combination of impairments: seizures, emphysema, anxiety, depression, personality disorder, and substance abuse disorder (20 CFR 404.1520(c) and 416.920(c)).

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.      The claimant can perform at employment that does not require lifting/carrying in excess of 25 (frequently) to 50 (occasionally) pounds. The claimant can perform at employment that does not require sitting, standing, or walking, for more than six hours of a normal eight hour workday. The claimant can perform at employment that does not require climbing of ramps or stairs. The claimant can perform at employment that does not require climbing of ladders, ropes, or scaffolds. The claimant can perform at employment that requires frequent balancing, stooping, kneeling, crouching, or crawling. The claimant can perform at employment that does not require concentrated exposure to fumes, odors, dusts, gases, poor ventilation, (environmental/breathing hazards), cigarette

smoke (which she frequently exposes herself to by smoking), etc. The claimant can perform at employment that does not require even modest exposure to hazards (machinery, unprotected heights, etc.). The claimant can perform at employment that does not require more than simple, repetitive, routine tasks of unskilled work. The claimant can perform at employment that does not require more than occasional interaction with the general public. (Exhibits 8-F, 10-F, 16-F, and 17-F) (20 CFR §§ 404.1567, 416.967,96-5p, SSR 96- 6p and 96-8p).

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.      The claimant was born on March 2, 1964 and was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (12/27/2004) (20 CFR 404.1563 and 416.963).

8.      The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from December 27, 2004, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 16–26.

B.     Legal Framework

1.     The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."  42 U.S.C. § 423(a).  Section 423(d)(1)(A) defines "disability" as follows:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of "disability" to a series of five sequential questions.  *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims).  An examiner must consider the following:  (1) whether the claimant is engaged in substantial gainful activity; (2) whether she has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1; (4) whether such impairment prevents claimant from performing past relevant work; and (5) whether the impairment prevents her from doing substantial gainful employment.  *See* 20 C.F.R. § 404.1520.  These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis.  If a decision regarding

disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant "disabled or not disabled at a step," Commissioner makes determination and "do[es] not go on to the next step.").

A claimant is not disabled within the meaning of the Act if she can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling (SSR) 82-62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to past relevant work, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to past relevant work. *Id.* If the Commissioner satisfies its burden, the claimant must then establish that she is unable to perform other work. *Id.; see generally Bowen v. Yuckert*, 482 U.S. 137, 146. n.5 (1987) (regarding burdens of proof).

2.    The Court's Standard of Review

The Social Security Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party." 42 U.S.C.

§ 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id., Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 428 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that his conclusion is rational. *See Vitek v. Finch*, 428 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

C.    Analysis

Plaintiff divides her appeal into challenges concerning the ALJ's consideration of her claims of physical impairments and pain—including her migraine headaches, back

pain, COPD, and obesity—and her claims of mental impairments. She also challenges the ALJ's discounting of the opinions issued by her treating physicians as to both her physical and mental condition.

1. The ALJ Considered and Properly Evaluated Plaintiff's Claims of Migraine Headaches, Back Pain, COPD, and Obesity.

Plaintiff claims that the ALJ did not did not comply with Social Security Ruling (SSR) 96-7p because he did not adequately address the effect her migraine headaches, back pain, or COPD on her ability to work. *See Pl.'s Br.* 5–8. She also claims the ALJ erred because he "did not consider the limitations caused by her obesity[,]" in violation of SSR 02-2p and that he did not consider her obesity in combination with her other claimed pain and impairments in violation of SSR 96-3p. *Id.* at 6–7.

The Commissioner counters that the ALJ correctly considered these complaints as appropriate under the regulatory framework and that his decision is based on substantial evidence. Further, Defendant asserts that the Commissioner properly considered Plaintiff's credibility in examining her subjective complaints. Def.'s Br. 13–14, 20–21.

SSR 96-7p requires that, prior to considering Plaintiff's subjective complaints, the ALJ must find there is an underlying impairment that has been established by objective medical evidence that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged. Only then is the ALJ to move to the second step: consideration of the record as a whole, including both objective and subjective evidence, to assess the claimant's credibility regarding the severity of her subjective complaints,

including pain. *See* SSR 96-7p, 61 Fed. Reg. 34483-01, 34484-85; *see also* 20 C.F.R. § 404.1529(b); *Craig v. Chater*, 76 F.3d 585, 591–96 (4th Cir. 1996).

The requirement of considering a claimant's subjective complaints does not mean the Commissioner must accept those complaints on their face. The ALJ may consider the claimant's credibility in light of her testimony and the record as a whole. If he rejects a claimant's testimony about her pain or physical condition, the ALJ must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. *Hatcher v. Sec'y, Dep't of Health & Human Servs.*, 898 F.2d 21, 23 (4th Cir. 1989) (*quoting Smith v. Schweiker*, 719 F.2d 723, 725 n.2 (4th Cir. 1984)). "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 61 Fed. Reg. at 34486.

Although couching her argument in terms of SSR 96-7p, Plaintiff glosses over the initial prong of its two-step analysis. Without addressing whether her complained-of symptoms have medical support, Plaintiff begins her argument with several paragraphs cataloging her own testimony regarding her subjective complaints regarding migraines. Tr. 5. Before the ALJ focuses on those subjective claims, however, he must consider whether those claims are medically supported.

The court agrees with the Commissioner that the ALJ considered Plaintiff's claims, as appropriate, during his discussion of Plaintiff's RFC. Regarding Plaintiff's claims of migraine headaches, seizures, and their associated symptoms, the ALJ examined the record evidence concerning these claims, but found "an absence of supportive clinical evidence," making him "unable to make a finding of disability based on these impairments." Tr. 21. The ALJ detailed Plaintiff's claims of frequent seizures and headaches that she claims follow the seizures. He compared these claims with the medical records, finding there is no objective medical evidence such as "brain CT scans or medical evidence to confirm actual seizures." *Id.* He explained that the treating physician had suspected Plaintiff to have a brain aneurysm based on her description of the frequency and pattern of her headaches, but that objective medical testing revealed no such condition. *Id.* (citing treatment notes from July 1, 2005 [Tr. 252]). He also noted that Plaintiff's August 24, 2005 neurological examination was normal, as was her October 2, 2006 physical examination. Tr. 21.

The ALJ limited Plaintiff to unskilled work and no more than occasional interaction with the general public. Tr. 5. Other than suggesting that migraine headaches "without a doubt[] adversely effect [sic] her ability to maintain even the basic activities of daily living," Plaintiff does not allege any specific limitations that result from her migraines. *See* Pl.'s Br. 5. Plaintiff has not established any error by the ALJ on this point. *See Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (finding claimant bears the burden of proof and production through step four of the sequential evaluation).

Citing to a July 2007 MRI, Plaintiff also alleges that the ALJ did not adequately consider her claims of back-and-leg pain. Pl.'s Br. 6. Again, review of the ALJ's decision indicates he considered the report of back pain and the MRI, but that he discounted that report as including no significant findings such as "disc herniation, deformity, or any significant neurological issues[,]" or clinical findings that would indicate work-limitations based on the claimed back pain. Tr. 23.

The court agrees that the ALJ's consideration of Plaintiff's back pain is supported by substantial evidence in the record. Although Plaintiff sought back-pain treatment three times in July 2007, she had no subsequent treatment. Tr. 339–41, 367–68. Other than some tenderness in her lumbrosacral spine on July 16, 2007, her examinations were normal. Tr. 342.

Plaintiff also argues that the ALJ should have considered the limitations caused by her alleged obesity, claiming such failure does not comply with SSR 02-1p, 67 Fed. Reg. 57859-02. Pl.'s Br. 6–7. Recognizing SSR 02-1p, the Commissioner asserts that Plaintiff's medical record does not include a diagnosis of obesity, such that the ALJ was not required or expected to consider her claimed obesity. Def.'s Br. 14–15. The court agrees.

Although she claims her height and weight combine for a body mass index (BMI) of 44, which is "morbidly obese," Plaintiff does not point to any record evidence regarding any diagnosis of morbid obesity or specific limitations her obesity causes. *See* Pl.'s Br. 7. This duty, however, does not extend to speculation; rather, it is the claimant's burden to

"furnish medical and other evidence that [the Commissioner] can use to reach conclusions about [the claimant's] medical impairment(s) and . . . its effect on [the claimant's] ability to work on a sustained basis." 20 C.F.R. § 404.1512(a). Plaintiff has not met her burden of demonstrating any impact of her obesity on her ability to work. SSR 02-1p makes clear that, it is not the mere presence of obesity that determines disability, rather it is the effect it has on a claimant's ability to function and perform work-related tasks.

Here, Plaintiff has proffered no evidence to show that obesity impacted her ability to perform such tasks or cause any of her claimed symptoms, leaving it to the ALJ to parse from the record. The Ruling on which Plaintiff relies prohibits such conjecture:

> [W]e will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record.

SSR 02-1p, 67 Fed. Reg. at 57862.

Although offering no diagnosis of obesity, Plaintiff's treating physician, Dr. Harris, did complete a questionnaire in which he indicated that Plaintiff's obesity, in combination with her COPD, caused work-related limitations. Tr. 333–34. Nowhere else in Dr. Harris's treatment records or diagnoses is there a mention that Plaintiff is obese, nor is there any more specific notation of what limitations her obesity may cause. As discussed in more detail below, the ALJ spent several paragraphs discussing Dr. Harris's opinion of Plaintiff's limitations. Tr. 22–24. The ALJ did not err by not expressly discussing Plaintiff's alleged obesity.

The court also finds that, as part of his review of the record as a whole, the ALJ properly completed Step Two of the analysis SSR 96-7p sets out for considering whether a claimant's subjective complaints are credible. The ALJ determined that Plaintiff's claims regarding the extent of her pain and limitations are not credible in light of her activities, her prior work, and the hearing testimony. *See* SSR 96-7p, 61 Fed. Reg. at 34485 (requiring that ALJ "make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). Factors the ALJ is to consider include claimant's daily activities and use of pain medication or other treatments for subjective symptoms. *See id.,* 20 C.F.R. § 404.1529(c)(4).

The ALJ considered Plaintiff's testimony regarding her daily activities—including driving without difficulty, performing some house cleaning, managing money, attending NASCAR races, going to restaurants, and gardening—in determining she was not disabled. *See* Tr. 19, 24. The ALJ discusses his findings regarding Plaintiff's daily activities in detail. *See* Tr. 4–5, 7–9. The court finds that substantial evidence supports the ALJ's credibility determination. *See, e.g., Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005) (upholding ALJ's credibility determination that was partially based on claimant's "routine" daily activities including watching television, cleaning the house, caring for a pet, and managing household finances).

The ALJ also focused on Plaintiff's treatment, noting as follows:

. . . It is [] noteworthy that [Plaintiff] did not complain of any seizures or headaches during [her July 2007 treatment by treating physician Harris]. As

such, it appears that her Effexor and Imitrex medications [] must provide sufficient control of those impairments. . . .

The fact that the claimant was not prescribed pain management, assistive devices, or recommended for surgery, strongly suggests that her impairments and their associated pain symptoms (with the exclusion of the headaches which are treated with other medications) are controlled to an adequate, if not superior degree with her Lortab medication. [] In fact, during hearing testimony she rated her pain as 6/10, which would be classified as no more than moderate.

Tr. 24. In addition, at the hearing, Plaintiff testified that she had headaches about once per month, and her partner testified that Plaintiff's headaches were controlled by medication. Tr. 422, 455 (Plaintiff's partner testifying headaches go away if Plaintiff takes medication and "calms herself down.") This evidence considered by the ALJ also bolsters his finding. *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (noting if symptoms are, or can be, reasonably controlled by medication, they may not be considered disabling under the Act).

Furthermore, the ALJ notes that Plaintiff continues to smoke and that this goes against medical advice. Tr. 22. On numerous occasions, Plaintiff's medical providers instructed her to quit smoking. Tr. 254, 303, 308, 349. Yet, Plaintiff testified that she continues to smoke despite her doctors' instruction. Tr. 447. Plaintiff's failure to stop smoking or even attempt to stop smoking supports the ALJ's finding that Plaintiff's allegations about disabling limitations from her headaches and COPD were not fully credible. *See, e.g., Hambrick v. Astrue*, C/A No. 5:07-779, 2009 WL 89423 *8 (S.D.W.V. March 30, 2009) (finding plaintiff's failure to follow directions to stop smoking detracted

from her claim of disability); *Johnson v. Bowen*, 866 F.2d 274, 275 (8th Cir. 1989) (finding failure to follow prescribed treatment was inconsistent with complaints that the alleged impairment was disabling).

The court finds the ALJ's thorough review of the record as a whole, including his articulated reasons for discounting Plaintiff's claims, supports a finding that the Commissioner's decision to deny benefits should be affirmed. *See Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000) (noting ALJ may discount a claimant's complaints if inconsistencies are apparent in the evidence as a whole).

  2. The ALJ Properly Considered and Discounted the Opinion of Plaintiff's Treating Physicians.

Plaintiff's final allegation of error concerning the ALJ's consideration of her physical impairments and complaints is that the ALJ improperly discounted the opinion of Dr. Harris, one of her treating physicians. Pl.'s Br. 7–12. The Commissioner defends the ALJ's decision by arguing that Dr. Harris's opinion discounted by the ALJ was inconsistent with the record evidence, including Dr. Harris's own notes concerning Plaintiff's treatment. Def.'s Br. 19–20.

SSR 96-2p provides that if a treating source's medical opinion is "well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight[.]" *See also* 20 C.F.R. § 404.1527(d)(2) (providing treating source's opinion will be given controlling weight if well-supported by medically-acceptable clinical and laboratory diagnostic techniques and inconsistent with other substantial evidence in

the record); *see also Craig*, 76 F.3d at 590 (finding a physician's opinion should be accorded "significantly less weight" if it is not supported by the clinical evidence or if it is inconsistent with other substantial evidence). When assessing a treating source's opinion, the ALJ shall consider the factors in 20 C.F.R. §§ 404.1527(d)(2) through (d)(6). However, determinations regarding whether a claimant is "disabled" and related legal conclusions are administrative determinations for the Commissioner and not for medical personnel. 20 C.F.R. § 404.1527(e) (noting certain opinions by medical sources—such as being "disabled" or "unable to work"—are not afforded "special significance").

Dr. Harris completed a questionnaire regarding whether Plaintiff had any work-related restrictions. He opined that she suffered from COPD, obesity, severe depression, and anxiety "as a result of her medical conditions[,]" and that she is limited in her standing and walking abilities. He indicated that she can stand for thirty minutes at one time and walk for ten minutes at a time. Further, he indicated that she could sit for two-to-three hours or stand for thirty minutes before she would need to lie down. Tr. 333. He also opined that her COPD and obesity limited her ability to lift and carry to no more than five pounds on a sustained basis and that such limitations were "most probably permanent." Tr. 333–34.

Plaintiff argues that this opinion was entitled to controlling weight. Pl.'s Br. 7-8. However, the ALJ has the discretion to give less weight to the opinion of a treating physician when there is "persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171,

176 (4th Cir. 2001). In this matter, the ALJ found Dr. Harris's own treatment notes to be persuasive evidence contrary to his opinion of disability. *See* Tr. 23–24.

The undersigned finds no error in the ALJ's treatment of Dr. Harris's findings. The ALJ did what statutory and regulatory law require that he do—examine the findings and explain why he discounted those findings. The medical records do not establish that Plaintiff's COPD prevented her from standing more than thirty minutes or walking more than ten minutes. Although Plaintiff did seek medical treatment for respiratory complaints from time to time, her respiratory examinations showed limited findings. For example, when Dr. Harris examined her, he found nothing more remarkable than bronchitis and wheezing in Plaintiff's lungs. *See, e.g.*, Tr. 351, 362, 366. The most recent respiratory examination on record, conducted by Dr. Neff on October 26, 2006, indicated Plaintiff had no chest pain, shortness of breath, or wheezing. Other than directing her to stop smoking (Tr. 303), neither Dr. Harris nor any other physician placed limitations on Plaintiff's activities as a result of her COPD. *See Bishop v. Barnhart*, 78 Fed. App'x 265, 268 (4th Cir. 2003) (finding the fact that no medical source placed restrictions on the claimant's activities supported finding of not disabled). In addition, no doctor, including Dr. Harris, diagnosed Plaintiff as "obese," or recorded findings that her obesity—alone or in combination with COPD—limited her ability to work. The ALJ did not err in discounting Dr. Harris's finding that Plaintiff's COPD and obesity combined to limit her RFC. The Commissioner's findings as to Plaintiff's physical limitations are supported by substantial evidence.

3. The ALJ afforded limited weight to the opinions of Plaintiffs' Treating Sources as to her mental health because those opinions were not supported by the medical evidence.

Plaintiff's second broad allegation of error focuses on her mental health. Asserting that "[a] major portion of [her] disability is as a result of her psychiatric condition," she claims the ALJ erred by discounting the opinions of Social Worker Cynthia Summers, Dr. Harris, and consulting psychologist Dr. David Tollison. Pl.'s Br. 8–9, 10–12. The Commissioner counters that the ALJ properly limited the weight of these opinions because the work-limitations Drs. Harris and Tollison placed on Plaintiff were not supported by clinical evidence or any type of substantial record evidence. Def.'s Br. 16–18. The Commissioner also argues that Dr. Tollison's opinion that Plaintiff met several mental impairment listings was not entitled to any heightened evidentiary weight because such findings are to be made by the Commissioner, not a medical source. Finally, the Commissioner argues that Ms. Summers's opinions should not be considered as a treating source because her treatment notes were not part of the record. Def.'s Br. 18.

The ALJ properly considered record evidence and determined that the opinions of Drs. Harris and Tollison that Plaintiff suffered mental limitations were not supported by the record as a whole. The ALJ articulated what he considered in making the decision to discount the opinions that Plaintiff suffers from a disabling mental condition.

As documented in his decision, the ALJ reviewed Dr. Tollison's report (found at Tr. 376 to 387) and Dr. Harris's letter agreeing with Dr. Tollison's findings (found at Tr. 389), but discounted their opinions as not being supported by Dr. Harris's treating notes

and other record evidence. Tr. 23. In addition, the ALJ noted that Dr. Tollison only saw Plaintiff once and that Plaintiff had received minimal mental health treatment after her alleged onset date. Tr. 23. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (finding failure to seek medical treatment may support a finding that claimant's impairments are not of disabling severity).

Additionally, the record evidence of Plaintiff's mental health treatment, taken as a whole, supports the ALJ's rejection of the opinions of Drs. Tollison and Harris. Plaintiff saw Dr. Browning regularly for a five months in 2005, but then ceased seeking mental health treatment. Plaintiff asks the court to consider a GAF score of 45 that Dr. Browning ascribed to her in March 2005 as evidence to support Dr. Tollison's opinion. *See* Pl.'s Br. 9 (citing to testing found at Tr. 260). However, the ALJ appropriately reviewed the entire record and did not reach his decision based on isolated reports such as those to which Plaintiff now points. Dr. Browning's treatment notes show that Plaintiff's symptoms improved in the months following the administering of the test. In April 2005, Plaintiff reported that her mind was not "racing," and Dr. Browning noted that her thinking seemed to be "more organized" and her mood improved. Tr. 256–57. Two months later, Plaintiff reported improvement in her sleep and mood swings with her current medication, and Dr. Browning noted Plaintiff's mood as okay rather than depressed as previously indicated. Tr. 254. By July 2005, Plaintiff's thoughts were "organized," her mood remained okay, and Dr. Browning documented that Plaintiff's depression was better. Tr. 251–52. By August 2005, when Plaintiff last saw Dr. Browning, her treatment notes indicate Plaintiff's

"good mood" and that Plaintiff was reflect that Plaintiff's mood was good when she did not have headaches, she was less paranoid and getting out of the house more. Tr. 250.

Further, in 2005, when the record contains the greatest documentation of Plaintiff's mental status, state agency physicians found Plaintiff did not meet the listings for affective disorders or anxiety-related disorders and generally had mild-to-moderate limitations from her mental health impairments. Tr. 209–21, 276–89. Dr. Horn concluded that Plaintiff's psychological impairments were severe, but did not preclude simple routine work away from the public. Tr. 221. Dr. Price opined that Plaintiff was capable of understanding and remembering simple instructions, was able to carry out simple tasks for two hours at a time without special supervision, would not have an unacceptable number of work absences due to psychiatric symptoms, could relate appropriately to coworkers and supervisors, but would be best suited for work in a setting with limited public contact. Tr. 274. Likewise, consultative examiner Dr. Bodtorf opined that Plaintiff had moderate limitations in independent functioning and mild-to-moderate limitations with respect to memory/concentration and social functioning. Tr. 203.

After 2005, Plaintiff received minimal treatment from her general practitioners for mental health. Plaintiff argues that it was improper for the ALJ to rely on her lack of treatment when she testified that she had difficulty affording medical care. Pl.'s Br. 9–10. During this time, though, Plaintiff continued to see her general practitioners, Drs. Neff and Harris, on a fairly routine basis and rarely reported psychiatric symptoms. While treatment notes from Drs. Harris and Neff reflect diagnoses of depression, there are no findings on

exam to support the diagnosis. For example, Dr. Harris diagnosed depression in February 2006, but his treatment notes for that day record a normal neurological exam and no indications of any psychological symptoms. Tr. 361. Each time she visited the practice of Drs. Neff and Harris, Plaintiff completed a form indicating her symptoms on the day of the visit. Rarely did she indicate any mental-health-related complaints or symptoms. *See* Tr. 227, 234, 241, 245, 341, 352, 356, 360 (visits in which she did not self-report any mental health symptoms); *but see id.* at 354, 363, 365 (visits in which she did self-report mental-health related symptoms). Even those times she indicated any psychiatric symptoms such as "depressed" or "can't sleep," her primary complaint was for a physical-health issue—bronchitis. *Id.* at 354, 363, 365.

In addition, the court agrees with the Commissioner's assertion that the ALJ owed no deference to Dr. Tollison's opinion that Plaintiff's mental state satisfied any listings. Def.'s Br. 26-17. Determinations regarding whether a claimant is "disabled" and related legal conclusions are administrative determinations for the Commissioner and not for medical personnel. 20 C.F.R. § 404.1527(e) (noting certain opinions by medical sources—such as being "disabled" or "unable to work"—are not afforded "special significance"); *see Morgan v. Barnhart*, 142 F. App'x 716, 721-22 (4th Cir. 2005) (unpublished) (distinguishing between medical opinions and legal conclusions by physicians that claimant is unable to work or disabled, finding the latter are matters reserved to the Commissioner and are not entitled to heightened evidentiary value). The ALJ did not err by discounting Dr. Tollison's opinions as to the listings.

Plaintiff argues that Ms. Summers's statement supports the findings of Dr. Tollison and Harris. Pl.'s Br. 8–10. The Commissioner counters that, because the record contains none of Ms. Summers's treatment records, her statement itself simply is not supported by the record, nor should it be considered in the analysis of the opinions of Drs. Tollison and Harris. Def.'s Br. 18. The court agrees. Without treatment notes concerning the time period at issue, Ms. Summers's letter should be afforded no special treatment.

III.    Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court finds that the Commissioner performed an adequate review of the whole record, including evidence regarding Plaintiff's mental and physical conditions, and the decision is supported by substantial evidence.

Accordingly, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under Section 205(g), sentence four, and Section 1631(c)(3) of the Act, 42 U.S.C. Sections 405(g) and 1383(c)(3), it is recommended that the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

July 9, 2010                                           Shiva V. Hodges
Florence, South Carolina                              United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**